SEXTON, Judge.
Both the plaintiff, Charles Stanfield, and the defendant, Warren S. White, appeal the trial court judgment in plaintiff’s favor in a suit on a promissory note. We reverse.
The defendant executed a promissory note which was payable to the plaintiff in the amount of $12,000. The note was dated October 6, 1979 and was due on February 15, 1980. The pre-printed portion of the note provided for interest at the rate of *754 eight percent (8%) per annum from maturity until paid and for attorney’s fees in the event of default in the amount of twenty percent (20%) of the principal and interest. The plaintiff made certain handwritten notations on the instrument. Along the left side of the instrument, he wrote “2/15/80 15% interest.” Across the top of the note he wrote “Mortgage on 22 head Registered Simmental Cattle.” At the bottom of the note by the printed line for the maker’s signature appears the signature of Gerald Taylor.
The defendant refused to pay the note. He asserted that no presentment was made, that the marginal notations constituted material alterations of the note made without his consent, that there was a lack of consideration for the note, and that if the note was enforceable, all interest should be forfeited in accordance with LSA-R.S. 9:3501 because the fifteen percent interest rate was usurious.
The trial court found that consideration existed, that the plaintiff had properly demanded payment of the note, and that the alterations were made without the consent of the defendant, but that they weren’t material and did not vary the basic provisions of the note.
The trial court entered judgment in favor of the plaintiff in the amount of $12,000 with interest at the rate of eight percent per annum from February 15, 1980 and awarded attorney’s fees in the amount of $2,000.
On appeal, the defendant asserts that the handwritten notations on the instrument were fraudulent and material alterations which discharged him, that there was no valid lawful consideration for the note, and that if the note is enforceable, all of the interest on the note should be forfeited.
The plaintiff also appealed, asserting that he is entitled to 15 percent interest from February 15,1980 and attorney’s fees in the amount of 20 percent of the principal and interest.
As noted by the trial court in its written reasons for judgment, the testimony was indeed “vague, confusing and highly corn tradictory.” Certain facts, however, are clear. In the late 1970s, the defendant became interested in starting a cold storage business. On July 6, 1979, he purchased an abandoned chicken hatchery in Lincoln Parish to serve as his storage plant. In August, 1979, the defendant incorporated his business as Lincoln Storage Systems, Inc., and on January 15, 1980, he sold the building and the equipment located therein to the corporation. The purpose of the corporation was to store refrigerated and frozen foods for the Department of Education of the State of Louisiana. The defendant obtained an SBA loan of $400,-000 to pay for improvements that he had to make to convert it into a cold storage facility.
At the time of this transaction, the plaintiff was a district manager for the meat cutters union. The circumstances surrounding the execution of the note, including the date and the reasons for the execution of the note, are in serious dispute.
The plaintiff testified that the defendant contacted him about finding a building suitable for his cold storage business and about using his knowledge and experience' in the food industry to set up the business. The plaintiff thus testified that he performed various consulting services for his fee. He told the defendant of the abandoned chicken hatchery and he discussed “the overall setup of the warehouse” with the defendant.
At this point, the plaintiff presented a rather confusing story of the financial transaction that occurred. He stated that in exchange for the equipment and his interest in the business, the defendant was to pay him “$5,000.00 and $14,000.00.” The plaintiff explained that he was to return $3,000 to the defendant which was to be used to help secure the cold storage contract through a state official. The plaintiff admitted that the defendant did pay him the $14,000 in cash and said that he gave the defendant the $3,000. Apparently, the defendant still owed the $5,000. The plaintiff claims that in lieu of paying the remainder of the debt in cash or equipment, the defendant tendered 22 head of cattle to him. The plaintiff said the defendant later *755 bought the cattle back from him in October, 1979. According to the plaintiff, the defendant did not pay for the cattle at the time he took possession of them. Instead, the plaintiff testified that the defendant promised to pay $12,000 for the cattle within 90 days.* The defendant did not pay at the end of the 90 days.
According to the plaintiff, the plaintiff and the defendant met on February 15, 1980 to discuss repayment. The plaintiff claims that it was on that date, February 15, 1980, that the defendant executed the note at issue. He claims that the date of October 6, 1979 which appears on the note is merely the date that the defendant took possession of the cattle and is not the date of execution of the note. The plaintiff testified that he made the notations about the 15 percent interest rate and the mortgage on the cattle in the defendant’s presence. The plaintiff also testified that the note was signed in Gerald Taylor’s presence and was notarized by Mr. Taylor. Mr. Taylor, however, denied notarizing the instrument, and indeed the instrument does not contain a notary seal. Taylor did state that he witnessed the execution of the note.
According to the defendant, the plaintiff kept pressuring him for the payment. In the defendant’s words, the plaintiff “just wanted to be paid.” Following the defendant’s purchase of the building, the plaintiff claimed that he was entitled to the air conditioners on top of the building and the hatchery cubicles and began removing this equipment. The defendant maintained that he owned the equipment and the plaintiff had no right to it. However, the defendant believed that the plaintiff could use his influence in a negative way to harm the operation of the defendant’s plant. Thus, in order “to get [the plaintiff] out of [his] hair” and keep the equipment, the defendant agreed to pay him. The defendant testified that he executed the note at issue in an effort to relieve the pressure he was receiving from the plaintiff. He maintains that he executed the note on October 6, 1979, not on February 15, 1980, as the plaintiff asserted.
The defendant denied that he ever sold the cattle to the plaintiff. He contends that a few months before the execution of the note he gave the cattle to the plaintiff as security for the money that the plaintiff was demanding and that the plaintiff returned the cattle when the defendant gave plaintiff the note.
The defendant also denied that he was present when the plaintiff made the written alterations on the note and denied that Mr. Taylor witnessed the execution of the note. The defendant testified that he had not seen the note from October 6, 1979 until this suit was brought against him in 1983.
As is patently obvious, this factual scenario presents a number of complicated issues. However, because of the result we reach, the only issue with which we will deal is that of whether the note contains a fraudulent material alteration. We nevertheless have presented most of the factual detail because it illustrates the divergent factual position of each side and also illustrates the complex factual context in which the issue of the changed interest rate arose.
The body of the note provides for an interest rate of eight percent. In the margin of the instrument is a handwritten notation providing for fifteen percent interest. The defendant argues that the marginal notation on the instrument increasing the interest rate is a fraudulent material alteration which discharges the obligation.
As we previously noted, the trial court determined as a factual matter that the plaintiff made the changes or alterations without the consent of the defendant. We are in full accord that this determination is sufficiently supported by the record. However, we disagree as to the legal effect of that change.
*756 LSA-R.S. 10:3-407(1) provides that “[a]ny alteration of an instrument is material which changes the contract of any party thereto in any respect_” LSA-R.S. 10:3-407(2)(a) provides:
(2) As against any person other than a subsequent holder in due course
(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. ...
There can be no doubt that the adoption by Louisiana of this provision of the Uniform Commercial Code changed the law such that an alteration which avoids the obligation must be both material and fraudulent, rather than only material. Comment, The Effect of the Adoption of the Proposed Uniform Commercial Code on the Negotiable Instruments Law of Louisiana — Material Alterations, 16 La. L.Rev. 105 (1955). It is further clear that under both the old and new law an alteration of the interest rate is a material alteration. Whitney National Bank of New Orleans v. Derbes, 436 So.2d 1185 (La.App. 4th Cir.1983), writ denied, 441 So.2d 1220 (La.1983), U.S. cert. denied, 466 U.S. 938, 104 S.Ct. 1912, 80 L.Ed.2d 460 (1984). However, under current law, alterations made with a benevolent motive to the benefit of the obligor, while material, are not fraudulent and thus do not discharge the obligor. LSA-R.S. 10:3-407. Changes made with fraudulent intent “may operate as a discharge.” LSA-R.S. 10:3-407, Comment 3 b.
Generally speaking, the party relying on an altered instrument has the burden to explain the alteration. Twilbeck v. Twilbeck, 192 So.2d 907 (La.App. 4th Cir.1966); Owens v. Felder, 35 So.2d 671 (La. App.Orl.1948). The filling in of a blank in a written instrument presents a question of authority and not one of alteration. Ken Edwards Real Estate, Inc. v. Molero’s Marina, 355 So.2d 1067 (La.App. 4th Cir.1978). Strikeovers and substitutions in place of a strikeover are clearly alterations. Ken Edwards Real Estate, Inc. v. Molero’s Marina, supra.
Succinctly stated, the instant plaintiff has unilaterally made an effort to change the contract by an addition thereto. He has steadfastly attempted to collect the larger interest rate even in this court by appealing and asserting his right to that interest rate. In the words of LSA-R.S. 10:3-407(1), he has made every effort to “[change] the contract” regarding the interest rate. Under these circumstances, then, the change is legally fraudulent within the meaning of LSA-R.S. 10:3-407(2)(a).
Having determined that the marginal notation is both material and fraudulent, however, does not resolve the question. The remaining and difficult question is whether the change of the interest rate by a marginal notation is an alteration in accordance with LSA-R.S. 10:3-407.
Louisiana cases dealing with changes in the interest rate made in the margin are of little assistance. In Deposit Guaranty National Bank v. Shipp, 252 La. 745, 214 So.2d 129 (1968), the issue was decided adversely to the defendant because of failure to plead the defense of material alteration. In Whitney National Bank of New Orleans v. Derbes, supra, the suit was against the endorsers of a note which contained marginal notations changing the interest rate. The marginal changes were determined to have been authorized by a general partner and binding on the partnership (the maker of the note); however, as to the individual endorsers of the note, the change represented a separate agreement of the maker to pay a higher rate of interest and did not affect the contract of the endorsers. It is uncertain whether the change in Malinda v. St. Philip, 138 So.2d 671 (La.App. 4th Cir.1962), was a strikeover or an addition. However, it also was determined to have been made with authority. The marginal change in A.L. Harrington Company v. Barron, 15 La.App. 187, 131 So. 503 (La.App. 2d Cir.1930), was also determined to have been made with authority.
Thus, the only guide we have been able to locate in our law dealing with a marginal *757 change or addition is the statute itself. LSA-R.S. 10:3-407(l)(c) defines an alteration as “adding to [the writing as signed] or ... removing any part of it.”
Comment 1 of the statute points out that “the addition or deletion of words which do not in any way affect the contract of any previous signer is not material.” The comment goes on to point out that subpara-graph (c), which we just referenced, is intended “to cover occasional cases of addition of sticker clauses, scissoring or perforating instruments where the separation is not authorized.” (emphasis ours)
The view of American Jurisprudence, 2d Edition, on the subject is that:
[I]t is well established that the making of a notation upon or an addition to an instrument does not constitute an alteration thereof, where there is no intent to change the effect of the instrument, but merely to make a memorandum upon it, or to evidence another and a separate contract upon the same paper.... If, however, the intent to change the effect of the instrument is present, what would otherwise be a mere memorandum becomes an alteration of the instrument, whether written in the body of the former writing, or in a corner, at the bottom, on the margin, or on the back.
4 Am.Jur.2d Alteration of Instruments, § 61, at 57-58 (footnotes omitted, emphasis ours).
Also, in discussing Comment 3 to U.C.C. § 3-407 (the source of our LSA-R.S. 10:3-407), American Law Reports, 3d Series, points out that:
[T]here is no discharge where a blank is filled in in the honest belief that the change has been authorized, or where a change is made with a benevolent motive, such as a desire to give the obligor the benefit of a lower interest rate. Thus, it is the reasoning of the Comment that changes favorable to the obligor are unlikely to be made with any fraudulent intent, but that if fraudulent intent is found, the alteration may operate as a discharge.
Annot., 88 A.L.R.3d 905, 911 (1978) (emphasis ours).
In the instant case, the record supports the trial court determination that the change was made without the defendant’s consent. There is no doubt that a raising of the interest rate is material. We have also determined it was done fraudulently. We now determine that, based on the specific wording of the statute at issue, the comment thereto and legal treatises, the unilateral marginal change in an interest rate to the detriment of the obligor is an alteration. We see no difference between this circumstance and a.strikeover.
Having determined that a material alteration has been made, it follows that the obligation at issue is discharged. LSA-R. S. 10:3-407. The judgment of the trial court is therefore reversed and there will now be judgment herein in favor of the defendant, Warren S. White, and against the plaintiff, Charles Stanfield, rejecting the demands of the plaintiff at plaintiff’s cost.
REVERSED AND RENDERED.

We are. unable to determine the exact amount the plaintiff was to receive. According to the plaintiffs testimony, the defendant owed $14,-000 which he paid in cash, and $5,000 which was not paid in cash; the payment of the $5,000 was secured by the pledge of the cattle. The note was in the amount of $12,000. This court does not know, and the trial court apparently did not know, why the amount owed changed from $5,000 to $12,000.