877 So.2d 234 (2004)
FLEET FUEL, INC. dba Fuelman, Plaintiff-Appellant,
v.
MYNEX, INC. and W. James Singleton, Defendant-Appellees.
No. 38,696-CA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 2004.
*236 Bodenheimer, Jones, Szwak & Winchell, LLP by David A. Szwak, Shreveport, for Appellant.
Davis Law Office, LLC, by S.P. Davis, Sr., for Appellees.
Before GASKINS, MOORE and HARRISON (Pro Tempore), JJ.
MOORE, J.
Plaintiff, Fleet Fuel, Inc., d/b/a Fuelman ("Fuelman"), appeals the Shreveport City Court's judgment sustaining exceptions of no cause of action and no right of action raised by the defendant, W. James Singleton, chairman of the bankrupt corporation Mynex, Inc., also a named defendant. On the day of the scheduled trial, the court instead held an evidentiary hearing on the exceptions, and subsequently granted both, dismissing Fuelman's suit against Mr. Singleton as the "guarantor" of debts incurred by Mynex, Inc. Plaintiff appeals, raising several assignments of error. We reverse and remand to the trial court for trial.

FACTS
Fuelman is in the business of supplying companies who operate a fleet of commercial vehicles in their business with a management service and accounting program for their gasoline purchases. By using an access card system, Fuelman provides detailed fuel accounting for each fleet vehicle and driver, as well as accounting details for the entire fleet.
Mynex, Inc. provides medical transportation services for medical patients. The chairman of the board of Mynex, Willie James Singleton, stated that Mynex "is a corporate entity owned by a number of different people and performed [sic] certain services."
Plaintiff alleged that Mynex applied for "access cards" from Fuelman. These cards would allow Mynex to purchase gasoline via Fuelman on open account. Upon request for the cards by Mynex, a Fuelman sales representative, Melissa Penuell, called on Mynex and delivered a credit account application to Mynex. The application was completed and returned to Ms. Penuell, who returned it to Fuelman. The application contained a signature line for a "Guarantor," with the terms of the agreement and guaranty explained on page 2, the back of the document  specifically, that the guarantor agrees to be held liable unconditionally, jointly and severally and solidarily liable with the customer for any sums due to Fuelman by virtue of the agreement.
After making purchases and payments over time, Mynex eventually failed to pay a *237 balance due of $7,336.53 to Fuelman. Mynex filed for bankruptcy and Fuelman looked to Mr. Singleton for payment. Mr. Singleton, an attorney, initially denied in his answer to the petition that he signed the agreement in his personal capacity, but signed only in his capacity as chairman of Mynex. Subsequently, however, on the day of trial, he filed exceptions of no right of action and no cause of action wherein he denied altogether that he signed the documents, and he denied that he had any knowledge or anything to do with authorizing the account with Fuelman.
Mr. Singleton testified that the signature of his name on the credit application as Guarantor, Exhibit P-4A and his signature as "chairman" on a corporate verification form, Exhibit P-4B, were not his. He said he did not know who made the signatures and did not recall authorizing opening an account with Fuelman. He said he was not involved in the day-to-day operations of Mynex, but merely served on the board of directors for the corporation.
Plaintiff's counsel introduced several documents or writings containing Mr. Singleton's signature. Mr. Singleton stated that he was more than sure that he signed the articles of incorporation of Mynex, Inc.; however, when counsel presented him with a copy of the articles of incorporation, Mr. Singleton denied his signature and the signatures of other members of the incorporators, including his counsel's signature.
Plaintiff produced two checks payable to Fuelman for charges to Mynex  one for $2,611.94 and one for $6,970.96  which had Mr. Singleton's signature as the maker of the checks. Mr. Singleton denied that these signatures were his.
Plaintiff introduced into evidence copies of Singleton's signatures from his personal driver's licenses issued by the Department of Motor Vehicles for the years 1991, 1995, 1999 and his current license issued in 2003. Singleton admitted that those signatures were his own. Plaintiff also introduced Singleton's First Supplemental Answer to the petition in which he alleged that he signed the credit application with Fuelman in his capacity as chairman of Mynex and not in his personal capacity.
Plaintiff submitted into evidence a copy of Singleton's application for a marriage license signed by him in two places. Mr. Singleton admitted these signatures, but denied his signature on pleadings he filed in a separate case (Exhibit P-15) in which represented a client. He said the signatures were made by his secretary. Mr. Singleton denied that he signed Exhibits P-16, P-17, P-18, P-19 and P-20, although the signor signed his name.
Mr. Singleton admitted that Exhibit P-21, a pleading in a case in which he was counsel, was his own. However, P-21 was merely another copy of the same document introduced in Exhibit P-8, which was submitted in a request for admissions of fact, which Mr. Singleton denied he had signed.
Plaintiff submitted other exhibits of Mr. Singleton's signature for a total of twenty-four exhibits, including the contract in question. The court did not admit P-22 through 24.
Melissa Penuell, a sales representative for Fuelman, testified that she was initially contacted by telephone by Jeanette Clark of Mynex. She met with Ms. Clark and Bibra Edwards at Winward Hospital. Ms. Penuell presented the Fuelman program and left a credit application for access cards. Ms. Clark returned the completed application to her. She stated that Ms. Clark told her that the guarantor signature was Willie Singleton. Ms. Penuell stated she never met with Mr. Singleton, and she did not personally witness Mr. Singleton sign the application.
*238 Bibra Edwards testified that she worked for Mr. Singleton for two years. Contrary to Mr. Singleton's testimony, she stated that Mr. Singleton signed their paychecks and required that all checks for purchases be signed by him. Also contrary to Mr. Singleton's testimony, she stated that he was involved in the day-to-day operations of Mynex. However, she never actually witnessed Mr. Singleton sign anything. Submitted documents for signature were returned to her by Ms. Anna Franklin. She stated that the Fuelman access card application was given to Ms. Franklin for Mr. Singleton's approval.
Anna Franklin testified that she was vice-president of operations, and in charge of hiring and managing the business operations, including the transportation division of the business. Ms. Franklin stated that she could not recall the Fuelman application, although she admitted that it probably passed through her hands or through Mr. Thomas's hands to Mr. Singleton for approval. She stated that Mr. Thomas worked side by side with her. She said she would have likely given the document to Mr. Singleton's secretary, Angela Howard, for approval by Mr. Singleton.
Ms. Jeanette Clark, the director of the transportation division, testified that she filled out the application and signed her name as the authorized representative. She identified the guarantor's signature as the signature of Mr. Singleton. She did not actually see him sign the document, but she said she recognized his signature from other documents. She said Anna Franklin brought documents to Mr. Singleton to be signed.
Angela Howard, Mr. Singleton's secretary and the person who Ms. Franklin said she gave documents to be signed by Mr. Singleton, did not appear to testify. Fuelman issued a subpoena for her appearance, but service was not accomplished.
Robert G. Foley, plaintiff's handwriting expert, testified regarding each of the signatures. He concluded that the person who signed P-1, P-2, P-3, P-5 and P-8 through P-24 was not likely the same person who signed P-4B, which is the Corporate Verification on the back or page two of the application. By contrast, however, he believed that the person who signed P-1, P-2, P-3, P-5 and P-8 through P-24 was the same person who signed P-4A, the "guarantor" portion of the application.
After taking the matter under advisement, the court rendered judgment in favor of Mr. Singleton, granting the exceptions with a finding that he did not sign the guarantor portion of the application in his personal capacity. Plaintiff raises several assignments of error on appeal.

NO CAUSE OF ACTION
A peremptory exception of no cause of action is used by the defendant to test the legal sufficiency of the petition by determining whether the law affords a remedy to the plaintiff on the facts that are alleged in the petition. Stevenson v. Lavalco, Inc. 28,020 (La.App. 2 Cir. 02/28/96), 669 So.2d 608, 610, writ denied, 96-0828 (La.05/17/96), 673 So.2d 611. In determining whether a plaintiff has stated a cause of action, the court looks to the facts set out in the petition, accepting them as true without regard to extrinsic evidence. La. C.C.P. art. 931; Montalvo v. Sondes, 93-2813 (La.05/23/94), 637 So.2d 127. The purpose of the exception is only to determine if a cause of action is pled and not whether the plaintiff will ultimately prevail at trial. When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Kuebler v. Martin, 578 So.2d 113, 114 (La.1991).
*239 An appellate court reviews a trial court's ruling on an exception of no cause of action de novo because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition. City of New Orleans v. Board of Com'rs of the Orleans Levee Dist., 93-0690 (La.07/05/94), 640 So.2d 237.
In this instance, the petition alleges that James Willie Singleton signed the credit application as the guarantor of Mynex's debt. If this allegation is accepted as true solely for purposes of the exception, then the trial court erred when it granted the exception of no cause of action. The law affords a creditor a cause of action against the guarantor of the debt when the primary debtor has not paid. La. C.C. art. 1758.

NO RIGHT OF ACTION
Next, the exception of no right of action contests whether the plaintiff is in the class to which the law extends a remedy. Greenbriar Nursing Home, Inc. v. Pilley, 93-2059 (La.5/23/94), 637 So.2d 429; Frazier v. Green Steel Bldg., Inc., 409 So.2d 1290 (La.App. 2 Cir.1982); Gustin v. Shows, 377 So.2d 1325 (La.App. 1 Cir.1979). Evidence is admissible in support of or opposition to an exception of no right of action. La. C.C.P. art. 931; Frazier, supra. The factual evidence admissible is restricted to that which relates to whether or not the plaintiff falls into a class having a legal interest to sue upon the cause of action sued upon. Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3 Cir.1967). The exception of no right of action is not to be used to urge that the plaintiff is without interest simply because the defendant has a defense to the action. Anderson v. Collins, 26,142 (La.App. 2 Cir. 1/6/95), 648 So.2d 1371, writ denied, 95-0629 (La.4/21/95), 653 So.2d 576; Frazier, supra; Bielkiewicz, supra.
Assuming the petition pleads a valid cause of action, the peremptory exception of no right of action questions whether the particular plaintiff is a party to whom the law affords a remedy. La. C.C.P. art. 927; Greenbriar Nursing Home, Inc., supra; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
In Selber Bros., Inc. v. Bryant, 406 So.2d 251 (La.App. 3 Cir.1981), the creditor's petition sought to recover from the defendant amounts past due on an open account, a right clearly afforded by law to the plaintiff. The defendant argued that she did not sign the charge slips, and, since she did not make the purchases, she argued the plaintiff had no right of action. The court held that the allegation that the defendant's daughter-in-law made the purchases by signing defendants signature to the charge sale slips is an affirmative defense. See La. Civil Code art. 1838.[1] Accordingly, the court held that the defendant may not use the exception of no right of action to urge that plaintiff has no right of action because she has a defense to the claim. Anderson, supra; Bielkiewicz, supra; Gustin, supra.
Thus, the exception of no right of action asks whether the suit involves the right plaintiff, and is not used to determine if the suit involves the right defendant or to assert some defense. In this instance, Singleton argues that he did not sign the guarantee. As a result, he argues that the plaintiff has no right of action. As stated above, the exception of no right of action cannot be used to urge that the plaintiff is *240 without interest simply because the defendant has a defense to the action. Greenbriar Nursing Home, Inc., supra; Frazier, supra; Bielkiewicz, supra. Fuelman has alleged in its petition that it and the defendant are the parties to a guaranty contract which the defendant has breached. The evidence submitted, namely Exhibit P-4A and P-4B, supports this allegation. Accordingly, the petition sets forth a cause of action and that the plaintiff is the proper party to assert it.
Because we determine by our de novo review the trial court erred in granting the exceptions of no cause of action and no right of action under the applicable legal standards, we deem it unnecessary to consider the appellant's other assignments of error.
We observe that this is a case involving the denial of a signature on a guaranty or surety agreement. In the trial on the exceptions, the plaintiff submitted several examples of the defendant's previous signatures on documents, requests for admissions regarding the authenticity of signatures,[2] and expert handwriting testimony over numerous defense objections. The Louisiana Civil Code provides that in a case such as this, a party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his. La. C.C. art. 1838. When the signature is denied, the Civil Code further provides that any means of proof may be used to establish that the signature belongs to the denying party. Id. Our jurisprudence has established that these means include, but are not limited to, the testimony of witnesses who saw the party write the signature in controversy, or testimony by witnesses who know the signature of the party, or by comparison of signatures. In the last instance, when a signature has been denied, the court may examine and compare the denied signature with other admitted signatures of the denying party. Hardcastle v. Ravia, 14 So.2d 295 (La.App. 1 Cir.1943). See also, Saul Litvinoff, 5 La. Civ. L. Treatise: The Law of Obligations, (2d ed.2001) § 12.31.
In the event the signature is determined to be authentic, as the court's ruling implied, then the guaranty contract should be interpreted under the special rules for the contract of suretyship, and where those rules are silent, the rules for contracts in general apply. McKesson Chemical Co. v. Tideland Chemical Co., 471 So.2d 812 (La.App. 3 Cir.1985).

CONCLUSION
For the reasons set forth herein above, we reverse the judgment of the trial court granting the exceptions of no cause of action and no right of action. We remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against Willie James Singleton.
REVERSED AND REMANDED.
GASKINS, J., concurring with reasons.
GASKINS, J., concurring.
I respectfully concur with the majority's opinion. I consider a more serious issue in this case to be Mr. Singleton's exception that the plaintiff has no cause of action because the document, on its face, does not constitute a guarantee. In the box "Guarantors of Payment," only the name Mynex, Inc. was filled out, yet at the bottom of the document under "Guarantor's Signature," the purported signature of Mr. Singleton is signed.
*241 Rather than finding that conflicting guarantee information, such as found here, negates a guarantee, I think that the issue becomes one of credibility on what the signor meant by his signature. Such an issue can only be resolved on the merits. See Homer National Bank v. Springlake Farms, Inc., 24,604 (La.App.2d Cir.03/31/93), 616 So.2d 255.
NOTES
[1] La. C.C. art. 1838 states:

A party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his.
In case of denial, any means of proof may be used to establish that the signature belongs to that party.
[2] The Code of Civil Procedure provides that a party may serve upon the other party a written request for admissions regarding the authenticity of documents. La. C.C.P. art. 1466.