STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1035

MASONITE CORPORATION D/B/A LOUISIANA MILLWORK

VERSUS

SERVICE DOOR & MILLWORK, LLC, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-5435
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Rick J. Norman, Jr.
Norman Business Law Center
145 East Street
Lake Charles, LA 70601
(337) 436-7787
COUNSEL FOR PLAINTIFF/APPELLEE:
    Masonite Corporation d/b/a/ Louisiana Millwork

**L. Richard Roy, III**
**Fletcher & Roy, LLC**
**660 Government St.**
**Baton Rouge, LA 70802**
**(225) 888-8000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Ralph L. Fletcher**

**SAUNDERS, Judge.**

This case is before us on appeal from a jury verdict rendered on suit on open account in favor of Masonite Corporation d/b/a Louisiana Millwork (hereafter "Appellee") against Service Door & Millwork, L.L.C. (hereafter "Service Door") and Ralph L. Fletcher (hereafter "Appellant"), in solido, in the amount of $215,026.95 plus $64,598.84 in attorney fees. For the following reasons, we affirm and award additional attorney fees.

## FACTS AND PROCEDURAL HISTORY

Service Door was a limited liability company established in Louisiana on August 15, 2001. Thereafter, an application for credit was submitted to Louisiana Millwork by Service Door on August 24, 2001. Louisiana Millwork began providing manufacturing, loading, and delivery services and building materials to Service Door. After performance of the services and delivery of the materials, Service Door was periodically invoiced and made periodic payments. In 2003, Masonite Corporation purchased Louisiana Millwork and refused to provide further materials without the personal guaranties of the debts of Service Door by its three members, Edgar S. Milton, IV, (hereafter "Milton"), Michael S. Marks (hereafter "Marks"), and Appellant. Thereafter, on July 25, 2003, Louisiana Millwork received a document entitled "Personal Guaranty," purportedly bearing the signature of Appellant. The document contained the following:



> In order to induce Louisiana Millwork, LLC, a Louisiana limited liability company ("LMW") to enter into an agreement to allow purchases on account (the "Agreement") with _____ ("Purchaser"), _____ (["]Guarantor") hereby makes the following guaranty, indemnification and agreements with and in favor of LMW:

The document was received by Appellee with the blanks designated for the names of the purchaser and guarantor remaining empty. Louisiana Millwork was subsequently merged into Masonite Corporation in 2005.

When Service Door failed to make payments, Appellee made demand by certified mail on August 25, 2005, pursuant to La.R.S. 9:2781. No payment was tendered. Thereafter, Appellee filed suit against Service Door and its three partners, Milton, Marks, and Appellant, alleging all three members had provided personal guaranties on behalf of Service Door in favor of Appellee.

Milton and Marks did not dispute that they had agreed to be personally obligated, but were discharged in bankruptcy prior to trial. The personal guaranty document on which Appellee relies bears only a stamp of Appellant's signature; expert testimony established that his name was not actually his written signature. In his answer to Appellee's petition on open account, Appellant denied that he signed, affixed, or authorized his signature to be affixed on the personal guaranty. Service Door and Appellant filed a reconventional demand and third-party claim against Appellee and its general manager, Robert W. McBride (hereafter "Mr. McBride"), alleging Appellee and McBride breached an oral contract to extend credit. In response, Appellee and McBride filed a peremptory exception of no cause of action, which was granted by the trial court.

On August 18, 2011, Appellant filed a motion for summary judgment, asserting that there was no contract between Appellee and Service Door, that Appellant did not sign or authenticate the personal guaranty in favor of Appellee, which he alleged was incomplete and undated, and that Appellee committed fraud in filing suit based upon a document submitted to it with blanks and later completed by hand. On April 13, 2012, Appellant's motion for summary judgment was denied.

The case was submitted to a trial by jury on September 4, 2012. On September 6, 2012, the jury returned a verdict in favor of Appellee in the amount of $215,026.95, which included the principal balance of $136,092.95, plus conventional interest at 1%. The jury also found that Appellant personally guaranteed the open account obligation of Service Door to Appellee. On March 14, 2013, the trial court ordered that the verdict of the jury be made the judgment of the court, and awarded attorney fees in the amount of $64,598.84 to Appellee. It is from this judgment that the instant appeal arises. Appellee answered the appeal and requested additional attorney fees for the defense of the appeal.

## ASSIGNMENTS OF ERROR

In his appeal, Appellant asserts that the jury erred in finding that:

1. Appellant executed, authorized, or adopted the stamped signature on the personal guaranty; and

2. the personal guaranty was enforceable when Appellant's signature was stamped on an incomplete personal guaranty form which did not contain the name of the principal debtor when it was stamped with Appellant's signature.

## STANDARD OF REVIEW

Findings of fact are subject to review for manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "In applying the manifest error-clearly wrong standard, we must determine not whether the jury was right or wrong, but whether its conclusion as factfinder was a reasonable one." *Billings v. State ex rel. Dep't of Transp. & Dev.*, 01-0131, p. 11 (La.App. 3 Cir. 6/13/01), 826 So.2d 1133, 1140 (citing *Mart v. Hill*, 505 So.2d 1120 (La.1987)). To warrant reversal of a jury's findings of fact, after reviewing the record in its entirety, an appellate court must first find that a reasonable factual basis does not exist for the finding, and, second,

determine that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Ortego v. Jurgelsky*, 98-1622, p. 2 (La.App. 3 Cir. 3/31/99), 732 So.2d 683, 685.

## ASSIGNMENT OF ERROR NUMBER ONE

In brief, Appellant asserts that the signature on the personal guaranty at issue is a stamp of his signature; this fact is not in dispute. However, Appellant asserts that he neither stamped nor authorized anyone to stamp his signature on the personal guaranty at issue. After reviewing the record, we find ample evidence to support the jury's conclusion that Appellant personally guaranteed the debt of Service Door.

In *Rainey v. Entergy Gulf States, Inc.*, 09-572, pp. 15-16 (La. 3/16/10), 35 So.3d 215, 225-26, the Louisiana Supreme Court explained:

> Written acts are of two kinds, authentic acts and acts under private signature. 5 SAUL LITVINOFF, LOUISIANA CIVIL LAW TREATISE—THE LAW OF OBLIGATIONS § 12.11 (2d ed.2001). . . . An act under private signature is one executed by the parties themselves without intervention of a public officer such as a notary public. LITVINOFF, § 12.26. "An act under private signature need not be written by the parties, but must be signed by them." La. Civ.Code art. 1837. The signature of the parties is the only element the law requires to give evidentiary weight to an act privately executed by the parties. LITVINOFF, § 12.28. However, and of great significance to the matter before this Court, "where a private act, rather than an authentic one, is concerned, a party's signature need not be handwritten, and a printed or electronically reproduced facsimile thereof may suffice, as is the case with contracts made in large numbers by one of the parties and executed in printed forms." LITVINOFF, § 12.28.
>
> Furthermore, where a statute requires a signature, a printed or typed "signature" is sufficient provided the signature was authorized

and intended to constitute the signature. *Reno v. Travelers Home and Marine Ins. Co.*, 02-2637, p. 4 (La. Ct.App. 1 Cir. 11/7/03), 867 So.2d 751, 754 (*citing Commerce Loan Co., Inc. v. Howard*, 82 So.2d 487, 488 (La.App.Orl.1955), *writ denied*, (La.1955)); *Fleming v. JE Merit Constructors, Inc.*, 07-926, p. 11 (La. Ct.App. 1 Cir. 3/29/08), 985 So.2d 141, 147. In the absence of a statute prescribing the method of affixing a signature, it may be written by hand, printed, stamped, typewritten, engraved, or by various other means. *Reno*, 02-2637 at p. 4, 867 So.2d at 754; *Fleming*, 07–926 at p. 11, 985 So.2d at 147.

Additionally, as the second circuit explained in *Fleet Fuel, Inc. v. Mynex, Inc.*, 38,696, pp. 9-10 (La.App. 2 Cir. 6/23/04), 877 So.2d 234, 240:

> The Louisiana Civil Code provides that . . . a party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his. La. C.C. art. 1838. When the signature is denied, the Civil Code further provides that any means of proof may be used to establish that the signature belongs to the denying party. *Id.* Our jurisprudence has established that these means include, but are not limited to, the testimony of witnesses who saw the party write the signature in controversy, or testimony by witnesses who know the signature of the party, or by comparison of signatures. In the last instance, when a signature has been denied, the court may examine and compare the denied signature with other admitted signatures of the denying party. *Hardcastle v. Ravia*, 14 So.2d 295 (La.App. 1 Cir.1943). See also, Saul Litvinoff, 5 La. Civ. L. Treatise: The Law of Obligations, (2d ed.2001) § 12.31.

Clearly, the personal guaranty at issue is not an authentic act, as it was not executed in the presence of a notary. In light of the well-established law concerning signatures affixed to acts under private signature, we find that the stamped "signature" of Appellant is sufficient if it was authorized and intended to constitute a signature. Therefore, we must turn to whether Appellant's stamped signature was authorized and intended to be his signature.

The record reveals that Appellant, who is an attorney, had a stamp of his signature. In the course of his testimony, he conceded that the stamp had been used to sign documents filed into court record. In fact, he conceded that it had been used to sign documents filed into court record on July 23, 2003, a mere two

5

days prior to the date the guaranty was stamped. This evidence supports the conclusion that Appellant intended that his stamped name constitute his signature.

Toni Stewart (hereafter "Ms. Stewart"), a certified public accountant, was employed by Appellee as an accounting manager. She testified regarding the agreement between Service Door and Appellant and the circumstances leading up to the instant suit whereby Service Door became behind in paying the invoiced amounts. She testified that she personally met with Appellant around July 2003 to "discuss [the] credit problems" and suggested "[Appellee] close the account." Ms. Stewart further testified that it was Appellant who suggested that personal guaranties be executed by Milton, Marks, and Appellant instead of closing the account. Finally, Ms. Stewart testified that she received a faxed copy of the signed guaranty, but she "was not happy with that. So, we were picking up the originals. We sent [Mr.] McBride, who was the president of the company at the time, to go by Appellant's office and pick it up." Thereafter, "[Mr. McBride] picked [the stamped guaranty] up from [Appellant's] office," but she did not know who stamped Appellant's signature or filled in the incomplete portions.

Mr. McBride testified that when Service Door's account became behind, "[Appellee] had to have a personal guaranty." He further testified that Appellant had previously refused to sign a guaranty, but that, at a meeting with Appellant, Milton, Marks, and Toni Stewart, "[Appellant] agreed to give us a personal guaranty because we would not continue to sell him product." Mr. McBride testified that Appellant later told him to pick up the personal guaranty at Appellant's law office. While traveling to make sales, Mr. McBride stopped at Appellant's office late in the afternoon, where a woman at the office gave him the stamped document. Thereafter, Mr. McBride spoke with Appellant "a number of times" during which the personal guaranty was discussed.

6

Dennis Markwood, Appellee's general manager, testified that he could not specifically recall seeing the personal guaranty bearing Appellant's stamped signature, but that he could recall specifics of a meeting that occurred with Appellant, Milton, and McBride because "there was a lot more at stake." He explained that, at the time, Service Door was "in deep trouble" and owed approximately $300,000.00 to Appellee. Mr. Markwood testified that, when Mr. McBride mentioned Appellant's personal guaranty, "[Appellant's] exact statement was that the building and property were worth between $800,000[.00] and $1,000,000[.00] and [Appellant] had more than enough equity in the building to pay off all the debt he owed . . . . He said he had the equity in the building to cover the debt that they had at Service Door."

In support of his argument that the jury manifestly erred in finding him personally liable for the debt of Service Door, Appellant directs this court to his own testimony that he had never personally guaranteed the debts of Service Door to any other vendors, that he did not authorize anyone to stamp his signature on any financial documents, like the document at issue in this case, and that he was unaware that the personal guaranty had been stamped with his signature prior to receiving the demand letter sent by Appellee. Although Appellant may have refused to guaranty the debts of Service Door to any other vendors, this does not refute the conclusion that he guranteed the debt of Service Door to the vendor in the instant matter. Moreover, his testimony that he did not authorize anyone to stamp his signature on the guaranty conflicts with the testimonies of Ms. Stewart and Mr. McBride that Appellant agreed to personally guaranty the debts of Service Door to Appellee. Additionally, Appellant's testimony that he was unaware of the guaranty until he received the demand letter from Appellee conflicts with the testimony of Mr. McBride that he and Appellant discussed the guaranty on "a

number of times" after Mr. McBride had picked it up from Appellant's office. It also conflicts with the testimony of Mr. Markwood, who testified that when the personal guaranty was discussed, Appellant mentioned he was financially able to pay the entire debt of Service Door.

The record reveals no manifest error in the jury verdict in favor of Appellee. Multiple witnesses testified that Appellant agreed to personally guaranty the open account debt of Service Door and that they recalled discussing the personal guaranty with Appellant after it had been received by Appellee. The jury weighed the credibility of the witnesses, balanced the conflicting testimony, and made its conclusions as fact finder, as it was entitled to do. The record reveals that Appellant did, in fact, have a stamp of his signature, and that it was used regularly to sign pleadings. Further, a review of the record reveals ample testimony upon which a fact finder could have found that Appellant authorized his signature to be stamped on the personal guaranty at issue. Thus, the record reveals a reasonable basis for the verdict. Having found no manifest error, we affirm the jury's verdict.

## ASSIGNMENT OF ERROR NUMBER TWO

In brief, Appellant asserts that, in the alternative, if the stamped signature was authorized, the jury erred in finding him bound by the personal guaranty because it did not identify the principal debtor when initially received by Appellee. Appellant relies on the testimony of Ms. Stewart that she initially received the personal guaranty by fax and from Mr. McBride bearing only the signature of Appellant. After reviewing the record, we find this assignment of error is without merit.

In *Stanfield v. White*, 535 So.2d 753, 756 (La.App. 2 Cir.), *writ denied*, 536 So.2d 1199 (La.1988), the second circuit explained: "The filling in of a blank in a written instrument presents a question of authority and not one of alteration." "In

8

particular, the mere fact that a contract contains blanks when signed does not make it invalid, as blanks may be filled in pursuant to parol authority or implied authority, so long as there is a meeting of the minds relative to the agreement itself." 3B C.J.S. Alteration of Instruments § 99 (footnotes omitted). One who receives a signed contract containing blanks has implied authority to fill in blanks according to the intent of the parties. *See Ken Edwards Real Estate, Inc. v. Molero's Marina, Inc.,* 355 So.2d 1067 (La.App. 4 Cir. 1978); *see also J.H. Landworks, LLC v. T. Lariviere Equip. & Excavation, Inc.*, No. 2:11-CV-00488-MHW, 2012 WL 4758079 (D. Idaho Oct. 5, 2012). "Whoever signs or executes an instrument bearing blanks and later contests the correctness of the completion of the blanks, bears the burden of proving by a preponderance of the evidence that the document was completed in a manner not agreed to between the parties." *Trinity Universal Ins. Co. v. Lambert*, 176 So.2d 651, 657 (La.App. 1 Cir.), *writ refused*, 248 La. 413, 179 So.2d 15 (1965).

Ms. Stewart testified that she initially received a copy of the personal guaranty by fax bearing only the signature of Appellant; the blank lines where the names of the debtor and guarantor were to be inserted remained blank. This fact is not in dispute. Ms. Stewart could not ascertain whether the document came from Appellant's fax or Service Door's fax because the document bore the fax time stamp of both. Ms. Stewart further testified that, later, when Mr. McBride picked up the original from Appellant's office, it still bore only Appellant's signature and the blanks designated to insert the name of the purchaser and the guarantor remained blank. Ms. Stewart also testified that she later received the same guaranty by fax *from Service Door* bearing the signature of Appellant, with the blanks completed; thus, it identified the purchaser as Service Door and the guarantor as Appellant. She testified that her office did not complete the blanks.

Ms. Stewart testified that she also received by fax from Service Door the personal guaranties bearing the signatures of Milton and Marks with the blanks reserved for insertion of the names of the purchaser and guarantor completed. Again, she testified that her office did not complete the blanks.

The record contains a letter, bearing the signature of Appellant, on Service Door letterhead dated June 27, 2003, just a few weeks before Appellee received the personal guaranty bearing the stamped signature of Appellant. Above the Service Door letterhead, the fax time stamp, also dated June 27, 2003, indicates the document was faxed from Appellant's law office at 13:50. Thereafter, on July 1, 2003 at 13:57, Service Door faxed the letter to Appellee, as indicated by a second fax time stamp. The document bearing the title "FAX COVER SHEET" was addressed to "Toni" from "Ralph Fletcher." Although this evidence does not indicate who actually signed or stamped the signature of Appellant on the letter, it does indicate that Appellant had a relationship with Service Door in which he would fax documents to Service Door, which would then forward the documents to Appellee by fax.

The record establishes that Appellee did receive a personal guaranty bearing the stamped signature of Appellant, with all of the blanks completed and clearly identifying the principal debtor and the guarantor, after Appellee received one executed in blank. Having already determined that the jury could have reasonably concluded that Appellant authorized his signature to be stamped on the guaranty and considering that it is not in dispute that the guaranty was initially received by Appellee in blank, we must now decide whether the evidence is such that the jury could have reasonably concluded that Appellant had granted the authority to complete the document.

10

The fax time stamps on the completed personal guaranty indicate that the document was faxed, first, from Appellant's law office to Service Door and, then, from Service Door to Appellee. Ms. Stewart testified that her office received the executed and completed personal guaranty by fax from Service Door after she had initially received it in blank and that her office did not insert the names of the purchaser and guarantor into any of the personal guaranties. The jury was entitled to rely on this evidence, and it supports the conclusion that the blanks were completed by someone at Service Door prior to being faxed to Appellee. Further, the evidence indicates it was not unusual for Appellant to fax documents to Service Door for forwarding to Appellee. In light of Appellee's later receipt of the executed and completed personal guaranty from Service Door, Appellant's history of faxing documents to Service Door for further forwarding to Appellee, and Appellant's part ownership of Service Door, the jury reasonably could have concluded that Appellant had granted the authority to complete the document by inserting of the names of the principal debtor and guarantor into the blanks. Thus, we find this assignment of error to lack merit.

**<u>ATTORNEY FEES</u>**

In its answer to the appeal, Appellee has requested additional attorney fees for work on appeal. "An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase." *McKelvey v. City of DeQuincy*, 07–604, pp. 11–12 (La.App. 3 Cir. 11/14/07), 970 So.2d 682, 690. We have affirmed the judgment of the trial court. We find that an additional award of $5,000.00 is appropriate to compensate for the work performed on this appeal. Thus, we award an additional $5,000.00 in attorney fees for the defense of the appeal.

11

## CONCLUSION

The record reveals no manifest error in the jury verdict in favor of Appellee. The jury weighed the credibility of the witnesses, balanced the conflicting testimony, and made its conclusions as fact finder, as it was entitled to do. A review of the record reveals ample testimony upon which a fact finder could have found that Appellant authorized his signature to be stamped on the personal guaranty at issue. Additionally, the record reveals evidence on which the jury could have reasonably relied to conclude that the executed document was completed with authority by someone at Service Door. Thus, the record reveals a reasonable basis for the verdict. Having found no manifest error, we affirm the jury's verdict. We award an additional $5,000.00 in attorney fees to Appellee, Masonite Corporation d/b/a Louisiana Millwork Louisiana. Costs of this appeal are assessed to Appellant, Ralph L. Fletcher.

**AFFIRMED.**