Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,533-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ORIGIN BANK                                            Applicant

versus

JPS AERO, L.L.C., JPS AVIATION,                       Respondent
L.L.C., K. PAUL BULLOCK, AND
MARGARET L. BULLOCK

* * * * *

On Application for Writs from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2020-1228

Honorable Robert C. Johnson, Judge

* * * * *

OFFICE OF W. KYLE GREEN, LLC              Counsel for Applicant
By: William Kyle Green

DELAWARE REGISTRY LTD                     Agent for JPS Aero, LLC

JASON P. BULLOCK                          Agent for JPS Aviation, LLC

SHOTWELL, BROWN, & SPERRY, APLC           Counsel for Respondent,
By: Clarence Allan Martin, III            K. Paul Bullock

MARGARET BULLOCK                          In Proper Person

* * * * *

Before COX, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.,**

This writ grant to docket arises from the Fourth Judicial District, Ouachita Parish, the Honorable Robert C. Johnson, judge, presiding. Plaintiff, Origin Bank, seeks review of the trial court's judgment denying its motion for partial summary judgment in its action to collect on a deficiency judgment from defendant, K. Paul Bullock, a commercial guarantor for the principal debtor, JPS Aero, L.L.C. For the following reasons, we grant the writ, reverse the trial court's judgment denying partial summary judgment, and render judgment granting summary judgment in favor of Origin Bank.

## FACTS AND PROCEDURAL HISTORY

On November 22, 2013, Jason Paul Bullock, as manager and member of JPS Aviation, L.L.C. ("JPS Aviation"), executed and signed an Aircraft Security Agreement wherein JPS Aero, L.L.C. ("JPS Aero") was identified as the debtor/borrower and assignor/guarantor. JPS Aero assigned a security interest in collateral to secure its indebtedness to Community Trust Bank (now Origin Bank). The collateral outlined in the security agreement was a 2013 King Air 250 B200GT bearing F.A.A. registration number N5087G, together with its engines, all avionics, log books, attachments, etc. On the same day Jason Bullock executed and signed the security agreement, Jason Bullock executed a promissory note ("Note 1") in favor of Origin Bank in the original amount of $3,866,199. The terms of Note 1 dictated that the first payment on the note was due on January 1, 2014, with the final payment due on December 1, 2018.

On September 3, 2014, K. Paul Bullock ("K. Paul"), a member of JPS Aero, allegedly signed a commercial guaranty in which he agreed to pay any and all outstanding debts incurred by JPS Aero "arising from any and all

present and future loans…that Borrower individually or collectively…owes or will owe or incur in favor of Lender."[1]

As manager of JPS Aviation and on behalf of JPS Aero, Jason Bullock executed another promissory note ("Note 2") in the original amount of $75,250, on February 10, 2017. This note provided that the first payment be due on March 10, 2017, with all subsequent payments payable on the same day of each successive month until paid in full, and that the final payment be due on February 10, 2022.

On December 31, 2017, K. Paul terminated his ownership of and membership in JPS Aero and sold these interests to Jason Bullock and Margaret L. Bullock. K. Paul later notified Origin Bank via letter on August 28, 2018, that he was terminating any outstanding commercial guaranties as to JPS Aero.

Origin Bank filed suit to collect when JPS Aero failed to make several payments on Note 1 and Note 2. In its petition, Origin Bank asserted that the payment due on December 1, 2018, for Note 1 was never made despite amicable demand. Origin Bank elected to mature Note 1 in its entirety pursuant to its terms. Furthermore, Origin Bank also asserted that payments due on January 10, 2020, February 10, 2020, March 10, 2020, and April 10, 2020, for Note 2 were not made. According to the terms of Note 2, Origin Bank chose to mature Note 2 in its entirety.

Because of its inability to pay on both promissory notes, JPS Aero confessed judgment for purposes of foreclosure and acknowledged indebtedness to Origin Bank up to the full amount of indebtedness. As a

---

[1] K. Paul alleges that he does not remember executing this Commercial Guaranty.

2

result, the 2013 King Air 250 was sold at a sheriff's sale in Ouachita Parish. The sale of the aircraft resulted in a credit of $1,075,001 being applied to the amount owed to Origin Bank effective on December 2, 2020.

On July 21, 2021, Origin Bank filed a petition for deficiency judgment and named as defendants JPS Aero, JPS Aviation, K. Paul, and Margaret L. Bullock. In the petition, Origin Bank alleged that the defendants owed $3,382,986.69, less a credit of $1,075,001, as borrowers and guarantors of the debts incurred by JPS Aero.

Origin Bank filed a motion for partial summary judgment on November 4, 2021, and included in the motion an affidavit from Bryan Burgess, an authorized representative of Origin Bank. Prior to the summary judgment hearing, the trial court sustained K. Paul's objection to Burgess' affidavit submitted by Origin Bank for the purpose of "authenticating" the commercial guaranty allegedly signed by K. Paul. Because it struck the affidavit, the trial court found that none of the documents attached could be "authenticated," including the commercial guaranty allegedly signed by K. Paul. Because the commercial guaranty could not be "authenticated," the trial court decided it was inadmissible evidence in support of Origin Bank's motion. Without the commercial guaranty as evidence, the trial court ruled that Origin Bank could not meet its burden of proof on summary judgment and denied Origin Bank's motion for partial summary judgment.

Following the trial court's denial of Origin Bank's summary judgment motion, the bank sought supervisory review, arguing that the trial court erred in sustaining K. Paul's objection to the affidavit and in not considering the evidence submitted in support of the motion for partial summary judgment.

This Court granted the application for review and issued the following findings and directions:

> The requirement that affidavits be based on personal knowledge is satisfied when the affiant is qualified to identify business records as such. La. C.C.P. art. 967; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219. So considering, we find that the trial court erred in excluding the affidavit of Bryan Burgess as support for applicant's motion for partial summary judgment. The trial court's order sustaining the objection and denying the motion for partial summary judgment is reversed. The matter is remanded for the trial court's reconsideration of applicant's motion for partial summary judgment with consideration of Bryan Burgess' affidavit and attachments as proper summary judgment evidence. *See also*, *Custom-Bilt Cabinet & Supply, Inc.* [*supra*].

After remand, the trial court reheard arguments on Origin Bank's motion for partial summary judgment on April 24, 2023. At the rehearing, Origin Bank argued that K. Paul is liable for payment as a guarantor/surety for all debts incurred by JPS Aero prior to and during the life of the commercial guaranty. Origin Bank contended that K. Paul signed a commercial guaranty on September 3, 2014, and, the commercial guaranty obligated K. Paul to pay the outstanding debts in Notes 1 and 2 owed by JPS Aero to Origin Bank. The bank further urged that a lender need only show proof of the existence of a principal debt and the guarantor's signature upon a guaranty agreement. Furthermore, the Civil Code requires only that a guaranty be express and in writing, it need not be in authentic form. Origin Bank argued that no genuine issue of material fact existed, and that summary judgment in favor of Origin Bank and against K. Paul was appropriate.

In opposition, K. Paul argued that he was not responsible for the payment demanded because the demand followed the sale of his interest in JPS Aero and the termination of the commercial guaranty. K. Paul also disputed but failed to specifically deny that he executed the commercial

4

guaranty for the indebtedness incurred by JPS Aero. Furthermore, K. Paul argued that no loan number from Note 1 and/or Note 2 existed on the commercial guaranty so the guaranty was not applicable to Notes 1 and 2.

On May 19, 2023, the trial court issued its written ruling and signed a judgment in accordance therewith on June 15, 2023, denying Origin Bank's motion for partial summary judgment. In its written ruling, the trial court claimed that it could not consider the commercial guaranty agreement, and found that a genuine issue of material fact existed as to whether the commercial guaranty at issue covered the debts of Notes 1 and 2. The court reasoned that this was due to the fact that the guaranty was established after Note 1 but before Note 2 was executed. The trial court further concluded that, where the intentions of the parties to a contract cannot be adequately discerned from the contract as a whole, the facts and circumstances surrounding the parties at the time of the contract are a relevant subject of inquiry, but this inquiry is improper on a motion for summary judgment. Accordingly, the trial court ruled that the intent of the parties as to which debts were secured was a genuine issue of material fact.

The trial court also ruled that the extent of any liability under the commercial guaranty was also at issue because K. Paul argued that he unilaterally terminated the guaranty by letter dated August 28, 2018, and the first missed payment did not occur until December 1, 2018. "This, [K. Paul argued], is a genuine issue as it relieves him of any liability because the guaranty agreement states that a termination received before any payments are incurred and subsequently unpaid is effective." The trial court noted that it "finds it convenient that, though the signature on both the guaranty and termination appear to be the same, [K. Paul] cannot recall executing the

5

guaranty for which he argues was properly terminated. Nevertheless, the Court does not pretend to possess the skills and expertise of a handwriting expert."

Lastly, the trial court ruled that the fact that the parties disagree was a genuine issue of material fact:

> Origin argues that [K. Paul] is responsible for the debt based on the guaranty agreement, [K. Paul] argues that, based on the termination, he is not. This is the ultimate genuine issue of material fact because, regardless of whether the Guaranty is authentic, the effectiveness of the alleged termination is outcome determinative of Origin's entire case against [K. Paul]. Origin failed to object to the alleged termination, so the Court must consider it. La. C.C.P. art. 966(D)(2). In doing so, the Court is inclined to agree with the defendant; and based on the argument and evidence presented, reasonable minds could reach more than one conclusion. Accordingly, Origin's Motion for Partial Summary Judgment must be denied.

Following the trial court's judgment, Origin Bank timely filed a writ application with this Court. Following review of the application, this Court granted the writ to docket.

## DISCUSSION

In its first assignment of error, Origin Bank contends that the trial court erred in finding a genuine issue of material fact concerning the authenticity of K. Paul's commercial guaranty. In support of this contention, Origin Bank argues that K. Paul's general denial in his answer and affidavit filed with his opposition to the motion for partial summary judgment are insufficient to create a denial of his signature on the commercial guaranty. Next, Origin Bank asserts that the trial court erred in its determination that the alleged termination of K. Paul's commercial guaranty created a genuine issue of material fact that could relieve K. Paul of any liability pursuant to the plain language of the commercial guaranty and Louisiana law. Lastly,

6

Origin Bank's third assignment of error suggests that the trial court erred in its finding of a genuine issue of material fact due to the commercial guaranty being executed after Note 1 but before Note 2 because the commercial guaranty is a continuing guaranty and requires no examination of the intent of the parties pursuant to La. C.C. art. 2046.[2]

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *City of Ruston v. Womack & Sons Constr. Grp., Inc.*, 55,328 (La. App. 2 Cir. 11/15/23), 374 So. 3d 311, *writ denied*, 24-00086 (La. 3/5/24); *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual

---

[2] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.

support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Springbok Royalty Partners, LLC v. Cook*, 54,788 (La. App. 2 Cir. 11/16/22), 351 So. 3d 850, *writ denied*, 22-01832 (La. 2/14/23), 355 So. 3d 614; *City of Ruston*, *supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Springbok*, *supra; City of Ruston*, *supra*.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Springbok*, *supra; City of Ruston*, *supra*.

Contracts of guaranty or suretyship are subject to the same rules of interpretation as contracts in general. *Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So. 3d 507; *Fleet Fuel Inc. v. Mynex Inc.*, 38,696 (La. App. 2 Cir. 6/23/04), 877 So. 2d 234; *Everest Stone LLC v. Louisiana S. Stone*, 54,437 (La. App. 2 Cir. 4/13/22), 337 So. 3d 641. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.

Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. La. C.C. art. 3035. Suretyship may be established for any lawful obligation, which, with respect to the suretyship, is the principal obligation. The principal obligation may be subject to a term or condition, may be presently existing, or may arise in the future. La. C.C. art. 3036. Suretyship must be express and in writing. La. C.C. art. 3038. Suretyship is established upon receipt by the creditor of the writing evidencing the surety's obligation. The creditor's acceptance is presumed and no notice of acceptance is required. La. C.C. art. 3039.

Suretyship may be qualified, conditioned, or limited in any lawful manner. La. C.C. art. 3040. A commercial suretyship is one in which: (1) the surety is engaged in a surety business; (2) the principal obligor or the surety is a business corporation, partnership, or other business entity; (3) the principal obligation arises out of a commercial transaction of the principal obligor; or (4) the suretyship arises out of a commercial transaction of the surety. La. C.C. art. 3042. A surety is liable to the creditor for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity. La. C.C. art. 3045.

The obligations of a surety are extinguished by the different manners in which conventional obligations are extinguished. La. C.C. art. 3058. A surety may terminate the suretyship by notice to the creditor. The termination does not affect the surety's liability for obligations incurred by the principal obligor, or obligations the creditor is bound to permit the principal obligor to incur at the time the notice is received, nor may it

prejudice the creditor or principal obligor who has changed his position in reliance on the suretyship. La. C.C. art. 3061. The law is well settled that a continuing guaranty remains in force until revoked by the guarantor, or its effectiveness is extinguished in some other mode recognized by law. *Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc.*, 32,441 (La. App. 2 Cir. 12/8/99), 748 So. 2d 594.

In the case of termination of the suretyship, notification that the suretyship is being terminated is necessary. First, it provides a point of reference from which one can determine what obligations the surety has incurred. Second, it places the creditor on notice that the surety will no longer be bound for future obligations of the principal debtor. This allows the creditor to make an informed decision as to whether he will continue to extend funds to the principal debtor. *Custom-Bilt Cabinet*, *supra*. This termination or discontinuance does not affect the surety's liability for obligations already incurred; the discontinuance relieves the surety only of liability for future loans. *Bergman v. Nicholson Mgmt. & Consultants, Inc.*, 594 So. 2d 491 (La. App. 4 Cir. 1/30/92), *writ denied*, 600 So. 2d 646 (La. 6/19/92), *citing First Acadiana Bank v. Bieber*, 582 So. 2d 1293 (La. 1991).

An act under private signature is regarded prima facie as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof. La. C.C. art. 1836. An act under private signature need not be written by the parties, but must be signed by them. La. C.C. art. 1837. A party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his. La. C.C. art. 1838. A party who refuses to either acknowledge or deny his signature should be held to

10

have acknowledged it. 5 Saul Litvinoff, Louisiana Civil Law Treatise: The Law of Obligations § 12.31 (2d ed. 2001). A general denial is insufficient to constitute denial of a signature. *Mirandona Bros. v. Danos*, 56 So. 2d 159 (La. App. Orl. 1952). An endorser who does not specifically deny his signature on a note will be considered as having admitted the signature. The defendant cannot avoid the effect of this rule and prevent recovery on a note by simply saying that he does not know if this is the same note that he endorsed, which is to say that he does not know his own signature. *Maddox v. Robbert*, 165 La. 694, 115 So. 905 (1928).

In case of denial, any means of proof may be used to establish that the signature belongs to that party. La. C.C. art. 1838. Our jurisprudence has established that these means include, but are not limited to, the testimony of witnesses who saw the party write the signature in controversy, or testimony by witnesses who know the signature of the party, or by comparison of signatures. In the last instance, when a signature has been denied, the court may examine and compare the denied signature with other admitted signatures of the denying party. *Masonite Corp. v. Serv. Door & Millwork, LLC*, 14-1035, p. 5 (La. App. 3 Cir. 4/1/15), 162 So. 3d 702, 706, *writ denied*, 15-0860 (La. 6/5/15), 171 So. 3d 951, *citing Fleet Fuel, Inc.*, 38,696 at pp. 9-10, *supra* at 240.

Origin Bank argues that the trial court erred in finding a genuine issue of material fact concerning the authenticity of K. Paul's commercial guaranty. First, Origin Bank asserts that K. Paul did not specifically deny his signature but instead claimed he had "no recollection of the execution of the Commercial Guaranty," and K. Paul's failure to acknowledge or deny

11

the signature should be considered as an admission that it is his signature on the guaranty. We agree.

Because the commercial guaranty was executed under private signature and is therefore not self-authenticating, K. Paul is required to either definitively acknowledge or deny his signature on the document. K. Paul may not avoid this requirement simply by stating he has no recollection of executing the guaranty. Because of this attempted evasion, we regard the commercial guaranty as being acknowledged by K. Paul. Similarly, the trial court could have compared K. Paul's alleged signature on the commercial guaranty to the signatures on K. Paul's affidavit and notification of termination. This comparison is a proper form of proof under our jurisprudence. In fact, the trial court even stated that it found "convenient that, though the signature on both the guaranty and termination appear to be the same, [K. Paul] cannot recall executing the guaranty for which he argues was properly terminated." Indeed, it is "convenient" that K. Paul cannot recall signing the commercial guaranty even though he argues he effectively terminated this same document. Given these reasons, we conclude no genuine issue of material fact exists as to the validity and authenticity of the commercial guaranty, and the trial court erred in finding otherwise.

Because the commercial guaranty is valid and authentic, we also find that no genuine issues of material fact exist as it pertains to K. Paul's liability for Notes 1 and 2. The Louisiana Civil Code provides for and Louisiana courts have routinely enforced continuing commercial guaranties that do not specifically detail within their four corners every principal debt that the guaranties cover. *See Custom-Bilt Cabinet*, *supra*. So long as the continuing guaranty is clear that the guarantor intends to secure any and all

12

principal debts existing at the time of the execution of the guaranty and

incurred during the life of the guaranty, the continuing guaranty is valid.  In

this case, the commercial guaranty states:

> Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.
>
> . . . .
>
> This is a "Continuing Guaranty" under which guarantor agrees to guarantee the full and punctual payment, performance and satisfaction of the indebtedness of Borrower to Lender, now existing or hereafter arising or acquired. On an open and continuing basis. Accordingly, any payments made on the Borrower's Indebtedness will not discharge or diminish Guarantor's obligations and liability under this guaranty for any remaining and succeeding Indebtedness even when all or part for the outstanding Indebtedness may be a zero balance from time to time. To the extent that Guarantor is or might become a member/owner of Borrower, Guarantor agrees that, notwithstanding the provisions of La. R.S. 12:1320, Guarantor shall be liable under this Guaranty for the Borrower's Indebtedness.

K. Paul executed the commercial guaranty on September 3, 2014.

Note 1 existed at the time K. Paul signed the commercial guaranty, making

him liable for this "now existing" debt.  Furthermore, Note 2 was executed

on February 10, 2017, and existed before the termination of the guaranty.  K.

Paul terminated the guaranty on August 28, 2018.  Despite termination of

the guaranty, the guarantor, in this case K. Paul, is liable for any principal

debts existing prior to the continuing commercial guaranty as well as those

incurred during the life of the guaranty.  *See First Acadiana Bank v. Bieber*,

*supra*.  K. Paul obligated himself as a surety to pay any existing debt and

any debt incurred during the existence of the commercial guaranty on behalf

of JPS Aero.  Note 1 existed prior to the establishment of the commercial

guaranty, and Note 2 came into existence before K. Paul terminated the commercial guaranty. While K. Paul is relieved from his obligation for any future liability, the commercial guaranty makes clear that K. Paul is liable for Note 1 and Note 2.

We also find K. Paul's contention that he is not liable for Note 1 or Note 2 because the commercial guaranty did not specifically reference Note 1 or Note 2 to be without merit. The language of the commercial guaranty is clear and unambiguous: "Guarantor agrees to guarantee the full and punctual payment… of the indebtedness of Borrower to Lender, now existing or hereafter arising or acquired." Whether the commercial guaranty made specific references to loan numbers or promissory notes is irrelevant. Notes 1 and 2 clearly fall under the terms of the obligations "now existing or hereafter arising or acquired." Therefore, the trial court erred in finding that a genuine issue of material fact existed as to K. Paul's liability for Note 1 and Note 2 under the commercial guaranty.

## CONCLUSION

For the reasons assigned, we grant Origin Bank's writ application, reverse the judgment of the trial court, and grant Origin Bank's motion for partial summary judgment against K. Paul Bullock. Costs of this appeal are assessed to defendant, K. Paul Bullock.

**WRIT GRANTED; JUDGMENT REVERSED.**

14